Clark S. Edwards *versus* Grand Trunk Railway of Canada.

A parol agreement by a railroad company to take all the wood the plaintiff would put on that season, at the same price paid him for that purchased before, and more, if the wood was better, is within the statute of frauds.

To constitute an acceptance of goods, something more than mere words are necessary; there must be some act of the parties amounting to a transfer of the possession, and an actual receipt by the purchaser, so that the seller no longer retains a lien for the price.

ON EXCEPTIONS from *Nisi Prius.*

ASSUMPSIT for two hundred and fifty cords of wood at $2,25 per cord. General issue and statute of frauds pleaded.

It appeared in evidence that one Corser was, at the time the alleged contract was made and during the time of its performance, the general wood agent of the defendants; that one Haskell had, for several years prior to and up to the time of making the contract, made numerous purchases for the defendants, of wood landed upon the line of the defendants' road, that the defendants had invariably received and paid for the wood so purchased, and that the plaintiff had knowledge of these facts.

The plaintiff then offered to prove that he made a verbal contract with said Haskell for the purchase and future delivery of wood to the defendants, in June, 1855; but the Judge excluded the evidence.

The plaintiff then testified, that he had sold to the defendants several hundred cords of wood, in the spring of 1855, at $2,25 per cord; that in June of that year he saw Corser and told him he (plaintiff) had a $500 note to meet, and would like to put on some wood for the defendants; that Corser replied, he would take all he would put on that season, at the same price paid him for that purchased in the spring, if the wood was as good, and would pay more if the wood was better; that he might put on as much or as little as he pleased; that no number of cords was agreed upon; that he spoke, of cutting and hauling the wood from his own land, and that a certain location was named containing some maple growth; that the wood was to be landed at the same place as that purchased in the spring, which place was about a mile below the Bethel depot, and within the limits of the road; that he commenced cutting and hauling the wood as agreed, and landed it as drawn, and continued so to do, until about the first of the following September, when he had got on two hundred cords or more; that, during the whole of this time, said Corser was passing up

and down the road, and by the wood once or twice a week, and saw the wood as landed within the lines of the road, and at the place agreed upon—spoke to plaintiff frequently about the wood, and asked him how he was getting along with it; and never made any objection to the kind or quality of the wood, nor to the place or manner of landing it; that the wood was of the same kinds of that sold the spring prior, and of as good, and, he thought, of a better quality, and was cut from the same tract of land; that, about the first of September, when he had got on two hundred cords or more, he called on Corser to have the wood measured, who replied that he would send M. Hotchkins up from Poland and have the wood measured the next week; that Hotchkins did not come and he again called on Corser to have it measured, and that he replied he was about to have some wood measured for Mr. Chapman, and that he would have plaintiff's wood measured immediately; that he called on Corser as many as three times and that at each time he agreed to have the wood measured, but never did; that he then made out a bill for two hundred cords of wood, and sent it to Portland for payment but that it was not paid; that he then went to Portland and presented the bill to the defendants' paymaster, said Haskell, for payment, who replied that he could not pay for the wood until it was measured; that he then called on Corser who informed him that he was no longer wood agent, but that Mr. Barrett was, and told him he had better go and get Barrett to buy the wood; that he called on Barrett about it, who replied that he would fulfil any agreement Mr. Corser had made about it, but did not pay him for it; that the wood lay at the place of landing for two or three years, became greatly damaged, a portion burnt up by fire from defendants' engines; and the balance was attached for his (plaintiff's) debts and sold at from six to ten cents a cord.

*B. M. Edwards,* called by the plaintiff, testified, that he helped plaintiff measure the wood, soon after it was landed, and that there were 250 cords of it. The Judge ruled that

the evidence was insufficient to authorize the jury to find an acceptance of the wood by the defendants, and, on motion of defendant's counsel, ordered a nonsuit.

The plaintiff's counsel contended that the contract as proved was not one for the sale of goods, wares or merchandise, to the amount of thirty dollars or more, but that it might be for a less amount, and therefore not within the statute, but the Judge ruled otherwise, to all of which rulings and order of the Judge, the plaintiff excepted.

*D. Hammons*, for the plaintiff.

1. The contract, by its terms, was for as many separate cords of wood, as the plaintiff saw fit to deliver. To bring the contract within § 5, c. 111, R. S., it must be for the sale of goods amounting to at least $30. " If the thing promised may be performed within the year, the contract is not within clause 5 in relation to time of performance." *Linscott* v. *McIntire*, 15 Maine, 201. Why, then, is one which may not be for the amount of $30, without § 5. Plaintiff was to put on one or one thousand cords, as he pleased.

2. It was for the manufacture of wood. Plaintiff was to cut the wood from his own land, and a certain lot of maple mentioned. The price being $2,50, shows that nearly the whole value consisted in its manufacture and delivery. Cutting, splitting, hauling and piling would cost $2,25. When the principal value of an article consists of the labor necessarily expended in its preparation and delivery, the contract should be regarded as one of manufacture and not of sale. " The statute of frauds does not prevent persons from contracting verbally for the manufacture and delivery of articles." *Hight* v. *Ripley*, 19 Maine, 139 ; *Towers* v. *Osborne, infra.*

An agreement to procure and deliver at a time and place fixed, a vessel frame, to be hewn and prepared according to certain moulds, is not within the statute. *Abbott* v. *Gilchrist*, 38 Maine, 260.

Kent says, in 2 Kent's Com., 512, " if the article sold ex-

isted at the time *in solido* and was capable of delivery, the contract was within the statute; but, if the article was to be afterwards manufactured or prepared by work and labor for delivery, it is not within the statute." He cites *Rondeau* v. *Wyatt*, 2 H. Blacks., 63; *Cooper* v. *Elston*, 7 T. R., 14; *Bennett* v. *Hull*, 10 Johns., 364; *Crookshank* v. *Burrett*, 18 Johns., 58; *Sewall* v. *Fitch*, 8 Cow., 215. See, also, *Spencer* v. *Cone*, 1 Met., 283; *Mixer* v. *Howarth*, 21 Pick., 205. If the contract states or implies that the thing is to be made by the seller, and blends together the price of the thing and compensation for work, labor, skill and materials, so that they cannot be discriminated, it is not a contract of sale, but of hiring and service and not within the statute. 2 Pars. on Con., 333, 334, note f, and cases there cited.

Growing wood is not wares and merchandize, and hence not within the statute.    8 Met., 34.

3. Wood was accepted by Corser and Barrett. Acceptance is an agreement to proposals in commerce by which a bargain is concluded and the parties bound. Webster's Dict. An agreement to receive something offered. Bouv. Law Dict. Acceptance waives rights the party receiving had. Ibid. Acceptance is express, as when it is openly declared by the party to be bound by it; or implied, as when he acts as if he had accepted. Bouv. Law Dict., under "Assent." See, also, 6 Wend., 103; 10 Wend., 185.

The wood was cut from the land agreed upon; within the time; landed upon the spot designated, within the limits of the defendants' road; their agent saw it repeatedly, as it was landed; talked with the plaintiff, made no objections of any kind, and hence wood was received.

4. It was accepted. Plaintiff had done everything he was to do. Defendants agreed three several times to send surveyor. Wood was delivered under Corser's general supervision. Barrett indorsed everything Corser had agreed to do. This is acceptance. 2 Pars. on Con., 321. It is always a question for the jury. Ibid., 322. There may be an acceptance without the buyer's examining the goods.

*Merton* v. *Tebbetts*, 152, B, quoted in a note to 2 Pars. on Cont., 325, note p. See, also, *Moore* v. *Small*, 19 Penn., 461, and Story's Eq., § 330. The statute to prevent fraud should not be so administered as to cover fraud.

*P. Barnes*, for defendants, cited, on the point of acceptance, Browne on Stat. of Frauds, § 329; on Manufacture, Ibid., chapters xii. and xv.

APPLETON, C. J.—This is an action of assumpsit for two hundred and fifty cords of wood, at $2,25 per cord.

The plaintiff offered evidence proving a parol agreement with the defendant corporation, through its agent, for the purchase of a quantity of cord wood. To avoid the statute of frauds, R. S., c. 111, § 5, upon which the defendants rely, the plaintiff insists that the contract was one for the manufacture of cord wood and not for its sale.

In *Garbutt* v. *Watson*, 5 B. & A., 613, there was a verbal contract by the plaintiffs, who were millers, for the sale of a quantity of flour, which at the time was not prepared and in a state capable of delivery; and it was held that this was a contract for the sale of goods within the statute of frauds. In *Waterman* v. *Meigs*, 4 Cush., 497, an agreement for the delivery of a quantity of planks for ship building, at a future time, and for a specified price, was held to be a contract for the sale of goods within the statute of frauds. The principles of these decisions was fully affirmed when this case was before us, in 48 Maine, 380.

In delivering the opinion of the Court, in 48 Maine, 381, Mr. Justice KENT remarks as follows:—"In the case before us, there was no agreement for any particular wood; no stipulation that it was to be cut from plaintiff's land, and no limitation of time when it should be cut. The contract might be fulfilled by the delivery of wood already cut or bought of another person." The plaintiff testified that no quantity of acres nor price therefor was agreed upon, that "he spoke of cutting and hauling the wood from his own land, and that a certain location was named, containing

some maple growth," from which the wood was hauled. But this statement presents no material alteration of the facts. Speaking about cutting wood on a certain lot is very different from contracting that the wood should be cut on a certain lot. There was no bargain as to any specific lot, from which the wood was to be taken. The contract, as stated by the plaintiff, did not require, for its fulfilment, wood from any particular or definite lot of land. The plaintiff might have bought it anywhere, without the violation of his agreement.

The plaintiff entirely fails in showing any acceptance of the wood by the defendants, or by any agent of theirs. As long as the seller's lien on goods for their price remains, and the buyer cannot maintain trover for their detention, there is no acceptance within the statute. To constitute a delivery and acceptance, something more than mere words is necessary. There must be some act of the parties amounting to a transfer of the possession, and an acceptance thereof by the buyer. *Shindler* v. *Houston*, 1 Coms., 261. The defendants were not, from any act of theirs, precluded from excepting to the quality of the wood. *Maxwell* v. *Brown*, 39 Maine, 98. In *Holmes* v. *Hoskins*, 28 Eng. Law & Eq., 54, the defendant verbally agreed to purchase of the plaintiff some cattle then in the field. After the bargain was concluded, the defendant felt in his pocket for his check book, in order to pay for the cattle, but finding it was not there, he told the plaintiff to come to his house in the evening for the money. It was agreed that the cattle should remain in the plaintiff's field for a few days and that the defendant should feed them with the plaintiff's hay, which was done. It was held that there was no evidence of acceptance within the statute of frauds. "The statute says," observes MARTIN, B., "that no contract of this sort shall be binding, unless the buyer shall accept part of the goods and actually receive the same, or unless there be a payment or note in writing. In this case none of these requisites have

been complied with. Neither party intended the plaintiff should have the cattle till he paid for them."

The wood was never measured by any assent of the defendants, nor did they in any way take possession or control of the wood. To take the case out of the statute, actual receipt by the buyer of goods verbally bargained for must be shown. *Shepherd* v. *Pressy*, 32 N. H., 49; *Gilman* v. *Hill*, 36 N. H., 311. This the plaintiff utterly fails in doing.

If this were the case of a manufactured article, it has been held that, to pass the title, there must be an acceptance, either express or implied, to transfer the title and enable the manufacturer to recover its price. *Moody* v. *Brown*, 34 Maine, 107.

The nonsuit was properly ordered and the exceptions must be overruled.

CUTTING, KENT, DICKERSON, DANFORTH and TAPLEY, JJ., concurred.